## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERRY A. KNOLL, individually and on behalf of all others similarly situated, | ) ) ) | CLASS ACTION COMPLAINT |
| | ) ) | COLLECTIVE ACTION COMPLAINT PURSUANT TO 29 USC § 216(b) |
| Plaintiff | ) ) | |
| vs. | ) ) | CASE NO.  1:18-CV-2632 |
| TITAN RESTAURANT GROUP, LLC d/b/a DONATOS PIZZA, | ) ) ) | |
| Defendant | ) ) | |

### *PLAINTIFF'S COMBINED CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES*

### *I.  STATEMENT OF THE CASE*

Plaintiff Sherry A. Knoll ("Knoll") brings this combined Rule 23 class action and FLSA collective action lawsuit against Defendant Titan Restaurant Group, LLC d/b/a Donatos Pizza ("Titan") to address class-wide wage and hour violations, particularly minimum wage violations, committed by Titan against its employees who work as pizza delivery drivers.  Knoll is pursuing Titan in a collective action under the Fair Labor Standards Act ("FLSA") to recover unpaid minimum wages caused by Titan's improper application of the FLSA's tip credit to its delivery drivers.  Knoll is also pursuing a Rule 23 class action claim under the Indiana Wage Payment Statute for herself and Titan's Indiana-based delivery drivers who were subjected to unlawful wage deductions Titan called "adjustments."  Finally, Knoll is pursuing her own individual wage claim under the Indiana Wage Payment Statute for unpaid hours of work she performed, particularly time she spent driving from work at one Titan location to work at another Titan location.

Knoll's class and collective action claims are well suited for class-wide treatment and will be simple to prove through Titan's own records (particularly pay stubs and time records) which will show payment of wages at less than the FLSA's required minimum wage, records

which will show illegally deducted or shared tip wages, and records which will show illegally deducted wages in the "adjustment" category.

## II. FACTUAL ALLEGATIONS

1.      Knoll currently resides in Greenwood, Johnson County, Indiana.

2.      Based upon information and belief, Titan is a restaurant company which owns and operates forty-two (42) or more Donatos Pizza franchises in Indiana and Ohio.  Based upon information and belief, more of Titan's Donatos Pizza restaurants are located in the State of Indiana than are located in the State of Ohio.

3.      Knoll is a current Titan employee.  She was hired as a delivery driver in April or May of 2018 and continued actively working until on or about July 9, 2018, when she fell and was injured at work.  She has been on medical leave.

4.      Knoll worked for Titan as a pizza delivery driver from fourt different Titan locations - the Stop 11 Road store in Greenwood, Indiana, the Plainfield, Indiana store, the Mooresville, Indiana store and a store in Carmel, Indiana.

5.      At all times during her employment with Titan as a food deliverer, Knoll was paid wages on an hourly basis and she was treated as a non-exempt employee.  In the same way, Titan paid all of its delivery drivers wages on an hourly basis and treated all delivery drivers as non-exempt employees.

6.      Titan employs delivery drivers at each of its Donatos Pizza restaurants to deliver food (primarily pizza) to customers at their homes, places of business, and other locations.  Titan's delivery drivers are required to provide and pay for their own automobiles, automobile insurance and cell phones with GPS capability.

7.      During Knoll's entire employment as a food deliverer, Titan paid Knoll for her hours of work at a rate of pay that was less than the FLSA minimum wage of $7.25 per hour.  During her employment, Tital paid Knoll for all work she performed at the rate of $4.05 per hour.  In the same or similar way, Titan pays all of its delivery drivers at a rate of pay that is

significantly less than $7.25 per hour (or in Ohio, $8.30 per hour).

8. Presumably, Titan was paying each of its delivery drivers at an hourly rate of pay that was less than $7.25 per hour because it was taking a tip credit against its minimum wage obligations owed to its delivery drivers.

9. It was improper and unlawful for Titan to claim and to take the FLSA's tip credit against the minimum wages owed to each of its delivery drivers for at least the following reasons:

    a.    Titan failed to properly inform Knoll and all of its other delivery drivers who were tipped employees of the tip credit provisions of the FLSA, in violation of 29 USC § 203(m);

    b.    Titan required Knoll and its other delivery drivers to work in the restaurants performing significant amounts of non-tipped work (work for which the delivery driver could not expect to be tipped by a customer), including work requiring delivery drivers to answer telephones and take customer orders, fill food orders, assist in the preparation of food, folding pizza boxes, and completing other tasks inside the restaurant as necessary;

    c.    Titan required Knoll and its other delivery drivers to provide and pay the costs of transportation necessary to deliver pizzas. Knoll and all of her fellow Titan delivery drivers were required, as a condition of the job, to provide their own clean and safe automobiles, automobile insurance and cell phones with GPS capabilities.

    d.    Titan was charging its delivery drivers and using some their delivery drivers' tips to cover Titan's own expenses and costs, including, but not limited to, 1) a pay roll scheme Titan called "adjustments" whereby Titan would deduct a portion of tips/wages from employees in one period to pay Titan back for wages it paid in earlier work weeks to bring the employee's wage (including all tips) up to the

3

minimum wage; 2) payment for failed deliveries (covering costs of customer orders that did not result in a payment by the customer); 3) payment for refunds to a customer who made a complaint (refunding tips, particularly credit card tips, to a customer who rendered a complaint).

10. To provide further explanation, the FLSA has a tip credit provision which permits employers of tipped employees to pay those employees at less than the FLSA-required minimum hourly wage and take a tip credit against its minimum wage obligations.  However, an employer is not permitted to take any tip credit against its minimum wage obligation in any of the following circumstances: 1) when the employer requires its tipped employees to return a portion of their tips to the employer, 2) when the employer requires its tipped employees to perform non-tipped work that is unrelated to the employees' tipped work, and 3) when the employer requires its tipped employees to perform non-tipped work that, although related to the tipped work, exceeds twenty percent of the employees' time worked during a workweek.  See *Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014); *Driver v. AppleIllinois, LLC*, 265 F.R.D. 293, 307 (N.D. Ill. 2010); *Bernal v. Vankar Enterprises, Inc*., 579 F.Supp.2d 804, 810 (W.D. Tex. 2008) (employer not permitted to take tip credit when it used plaintiffs' tips to pay for cash shortages.)

11. During the entire time Knoll has been employed by Titan and, based upon information and belief, for a period of far more than three years prior to this complaint, Titan has been requiring its tipped delivery drivers to return a portion of their tips to the employer, directly and indirectly.  In the same way, Titan has been requiring its delivery drivers to perform non-tipped work that is unrelated to the employees' tipped work and, at the least, requiring delivery drivers to spend more than 20% of their time each work week performing non-tipped work that can only be claimed as "related to" tipped work.  In so doing, Titan has committed FLSA minimum wage violations against Knoll and every other similarly situated delivery driver.

12. To provide a detailed and class-wide example, Titan has a policy and practice

4

whereby it fails to reimburse and/or fails to even come close to adequately reimbursing its delivery drivers for their transportation expenses, including, but not limited to, gasoline expenses, automobile maintenance expenses, automobile insurance, automobile depreciation, cellular telephone/GPS expenses (including increased data plan costs), all suffered and required for the primary benefit of Titan, the employer.  Knoll was simply not paid any type of mileage reimbursement for her transportation.  At one point, Knoll's Titan manager claimed Titan may pay some very small, fixed amount per pizza delivery, believed to be $1.50 per delivery, but this amount was not paid to Knoll.  Moreover, small, fixed amounts of $1.00 - $2.00 per delivery would not come close to adequately reimbursing delivery drivers for such transportation expenses, if they had been paid.  At present, the IRS mileage reimbursement rate is $0.545/mile. Knoll's average delivery involved a 10 mile round trip.  Knoll routinely drove 100 to 150 miles each work shift.  Based upon information and belief, all Titan delivery drivers were similarly subjected to unreimbursed transportation expenses and/or inadequately reimbursed transportation expenses.  Particularly as Knoll and all fellow Titan delivery drivers were paid at an hourly rate significantly below the FLSA minimum wage of $7.25/hour, each driver was either 1) being paid a net wage that was less than minimum wage and/or 2) being forced to share his/her tips with the employer to cover transportation expenses incurred for the employer's benefit.

13.     To provide another detailed and class-wide example, Titan has a policy and practice whereby it requires Knoll and all of her fellow delivery drivers to perform significant non-tipped work each work week in the Titan restaurants.  This non-tipped work includes, but is not limited to, work requiring delivery drivers to answer telephones and take customer orders, fill food orders, assist in the preparation of food, folding pizza boxes, and completing other tasks inside the restaurant as necessary.  Titan's requirement of this non-tipped work from delivery drivers is accentuated by the fact that Titan describes its delivery driver positions in some online classified advertisements as including essential responsibilities such as "perform other in-store functions while not driving such as folding boxes or other cross-functional associate level

duties" and "takes accurate phone orders."  Titan violates the FLSA by paying Knoll and her fellow delivery drivers at a sub-FLSA minimum wage rates for all of this significant, non-tipped work.

14.     Titan subjects Knoll and all other delivery drivers to FLSA minimum wage violations in another way.  Titan does not pay its delivery drivers a minimum wage on a week by week basis in a manner that results in the minimum wage being paid "finally" and "free and clear" of any "kickback."  In any week in which a delivery driver does not earn at least a minimum wage for her hours worked through a combination of the sub-minimum wage hourly pay (e.g., $4.05/hour) and the tips received, Titan is obligated by law to make up the difference and make a payment of additional wages that increases the delivery driver's pay for that work week to the FLSA minimum wage of $7.25 per hour.  Titan will initially make up this minimum wage by paying an amount it calls a "Tip Adjust" on the employee's pay stub.  However, in a later work week and pay period, Titan will illegally deduct a portion or an amount equal to that earlier "Tip Adjust" payment from the delivery driver's tips and wages to repay itself for the "Tip Adjust" payment in the earlier work week.  On employee pay stubs, Titan labels these illegal deductions as an "Adjustment" and shows the amount deducted in parentheses.  This illegal "Adjustment" deduction violates the FLSA's free and clear, no kickback rule, see 29 CFR § 531.35, and also violates the Indiana Wage Payment Statute by resulting in illegal deductions that cause the underpayment of wages based upon violations of the Indiana Wage Assignment Statute, see I.C. 22-2-6-2.  These illegal deductions, which are the employer's illegal use of an employee's tips, violate the tip credit rule and mean that every delivery driver subjected to these illegal deductions is owed the full minimum wage (under the FLSA, $7.25/hour and in Ohio, $8.30/hour) for every hour the delivery driver worked for Titan.  For those Indiana-based delivery drivers, each person will be owed the illegally deducted "Adjustment" amounts as an unpaid wage, along with statutory liquidated damages for the bad faith deductions and violations of the Indiana Wage Payment Statute.

15.     To provide a specific example, Knoll can describe her paychecks dated June 12, 2018 and June 26, 2018.  Knoll's June 12, 2018 paycheck describes work she performed over a two week pay period from May 22, 2018 to June 4, 2018.  Knoll's pay stub shows she worked 36.72 hours and was paid $148.72 at her $4.05/hour rate.  Knoll's tips reported were only $81.42.  In total, Knoll's hourly wages and tips added only to $230.14.  When $230.14 is divided by 36.72 hours, Knoll was paid only at a rate of $6.26/hour and did not get paid an amount equal, at least, to the minimum wage.  Titan paid Knoll an additional $36.08 in the "Tip Adjust category to increase Knoll's gross wage for the two week period to $266.22.  When $266.22 is divided by 36.72 hours, Knoll was paid at precisely $7.25/hour for her wages.   Knoll's June 26, 2018 paycheck describes work she performed over a two week pay period from June 5, 2018 to June 18, 2018.  Knoll's pay stub shows she worked a total of 74.14 hours with 4.94 of those hours as overtime hours.  Knoll was paid $318.18 at her $4.05/hour rate.  Knoll's tips reported were $394.78, but Titan deducted $36.08 from those tips in a category it called "Adjustment."  In total, Titan paid Knoll $676.88 of the $712.96 Knoll earned during that two work week period and was owed in wages.

16.     Titan did not have a valid, compliant wage assignment from Knoll or from any delivery driver permitting it to take its "Adjustment" deductions from delivery driver wages.  In addition to the fact that Titan's "Adjustment" deductions violate the FLSA's minimum wage requirements, the tip credit rule and the free and clear, no kickback rule, the deductions are taken for reasons not permitted under the Indiana Wage Assignment Statute, see I.C. 22-2-6-2(b).

17.     Additionally, as shown in the examples of Knoll's pay stubs in Paragraph 15 above, Titan further violates the FLSA's minimum wage provisions, including the tip credit rule, by only checking to see if employees make at least a minimum wage over an average two week period.  The FLSA requires that employees, including Knoll and all Titan delivery drivers, be paid at least a minimum wage in every work week, meaning every seven day period.  To comply with the FLSA, Titan has to evaluate and adjust, if necessary, delivery driver wages every work

week (7 days).  Titan has failed to ensure its delivery drivers are being paid a minimum wage on a work week by work week basis.

18.     Based upon its policy and practice of taking deductions it calls "Adjustments," Titan has systematically subjected Knoll and every delivery driver to FLSA minimum wage violations in multiple ways.  The deductions themselves violate the tip credit rule and result in class-wide minimum wage violations.  Titan owes every delivery driver the difference between the sub-minimum hourly wage paid and the applicable minimum wage for every single hour worked by every delivery driver.  Additionally, on a systematic basis, Titan subjected every delivery driver in every week to the possibility of its "Adjustment" deduction which means that no delivery driver was ever paid a minimum wage on a "final" basis or that was free and clear and not subject to a kickback.  Because Titan actually took these "Adjustment" deductions, it violates the FLSA's minimum wage provisions, including the tip credit rule.  Finally, based upon its policy and practice of taking "Adjustment" deductions from delivery driver wages, Titan systematically violated the rights of its Indiana-based delivery drivers, including Knoll, and committed class-wide illegal wage deductions resulting in class-wide damages under the Indiana Wage Payment Statute owed to all affected Indiana-based delivery drivers.

19.     Separate from the multiple types of violations described above, Titan systematically subjected Knoll and its delivery drivers to FLSA minimum wage violations caused by Titan's policy and practice of making delivery drivers use or apply their tips to cover Titan's own business expenses.  To provide examples, Titan was charging its delivery drivers and using some of their delivery drivers' tips to cover Titan's own expenses and costs, including, but not limited to, making the delivery driver cover the cost for a failed delivery (covering costs of customer orders that did not result in a payment by the customer) and payment for refunds to a customer who made a complaint (which resulted in refunding tips when credit card payments had been made and included a tip on the credit card charge).  Knoll was actually required to use her tips to cover charges in situations in which a customer did not pay for a pizza order and when

8

customers were refunded their credit card payment after making a complaint.

20.     Finally, Knoll is pursuing her own individual wage claim under the FLSA and Indiana Wage Payment Statute for unpaid hours of work she performed, particularly time she spent driving from work at one Titan location to work at another Titan location.  Knoll worked for Titan at four of its Greater Indianapolis area restaurants - the Stop 11 Road store in Greenwood, Indiana, the Mooresville, Indiana store, the Plainfield, Indiana store and a Carmel, Indiana store.  It was common for Knoll's Titan managers to ask her to work at two or more stores during the same work day.  In such circumstances, Knoll would clock in and work at Store 1.  When preparing to leave to work at Store 2, Knoll would be instructed to clock out at Store 1 and drive to Store 2.  When Knoll arrived at Store 2, she was instructed to clock back in and would be on the clock until she finished the balance of her work day at Store 2.  Knoll should have been paid for her time traveling, often one hour, between Store 1 and Store 2, as that travel time was part of her continuous work day and was work time.  Titan did not pay Knoll for her compensable time traveling between Titan stores during her continuous work day.  Because it paid her nothing, this failure constitutes a FLSA minimum wage violation.  The unpaid time also results in unpaid wages owed to Knoll under the Indiana Wage Payment Statute.

21.     Titan has intentionally, knowingly, and with reckless disregard violated Knoll and her fellow delivery drivers' rights to earned wages and minimum wages.  Knoll is expressly alleging that Titan has acted in bad faith in violating its delivery drivers' rights under the FLSA and the Indiana Wage Payment Statute.

22.     By way of this Complaint, Knoll seeks for herself and for all other similarly situated delivery drivers, all minimum wages, and any and all liquidated damages owed to each.  For herself and all other similarly situated Indiana-based delivery drivers, Knoll seeks all unpaid and illegally deducted wages, plus all liquidated damages.  Additionally, Knoll seeks payment of her reasonable attorney's fees, costs and expenses.

### III.  COLLECTIVE ACTION ALLEGATIONS

23.     Knoll incorporates herein by reference paragraphs 1 - 22 above.

24.     This Complaint is brought as a collective action on behalf of other current and former Titan delivery drivers who were similarly denied payment of wages and minimum wages under Titan's multiple compensation schemes that involved the illegal and improper use of the FLSA tip credit and the failure to pay wages at the FLSA minimum wage rate of at least $7.25 per hour.  This collective action protects all such delivery drivers who work or have worked for Titan in Indiana or Ohio at any time from three years prior to the filing of this Complaint to the present.

25.     This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Knoll and all of Titan's current and former delivery drivers who were damaged by Titan's compensation system which caused each delivery driver to receive less than the FLSA required minimum wage for each hour worked.  By virtue of the "collective action," Knoll represents the identical and/or similar interests of former and current hourly-paid delivery drivers who were denied wages and minimum wages under the same circumstance.  Knoll anticipates that other Titan delivery drivers and former delivery drivers will opt in to the action.

26.     Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

27.     Knoll's claims are typical of the claims of the whole collective group of current and former hourly-paid delivery drivers harmed by Titan's unlawful taking of the FLSA tip credit, by Titan's illegal deductions from delivery drivers' tips, and by Titan's failure to pay at a minimum wage rate for non-tipped work.  Knoll's claims are typical of the claims of the whole class of current and former delivery drivers harmed by Titan's unlawful taking of the FLSA tip credit.

28.     Knoll will act to fairly and adequately protect the interests of the entire collective group of current and former Titan delivery drivers.

29.     A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of FLSA violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

30.     A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

## IV.  CLASS ACTION ALLEGATIONS (With Knoll Serving as Rule 23 Class Representative for All Indiana-Based Delivery Drivers)

31.     Knoll incorporates herein by reference paragraphs 1 - 30 above.

32.     This Complaint is brought as a class action on behalf of other current and former employees Indiana-based delivery drivers who were similarly denied payment of wages under Titan's compensation scheme that involved illegal wage deductions.

33.     With respect to Rule 23(b)(3) class action claims, Knoll will serve as class representative over the following class:

> Knoll will serve as class representative for the class-wide claims brought under the Indiana Wage Payment Statute.  This action is filed as a class action pursuant to Rule 23 of the Indiana Rules of Trial Procedure on behalf of Knoll and on behalf of all eligible current and former Indiana-based employees of Titan who were damaged by Titan's "Adjustment" deductions which resulted in illegal wage deductions.  By virtue of the class action, Knoll represents the identical and/or similar interests of former and current Indiana-based delivery drivers who were denied wages under the same circumstance.

34.     The number of Titan's current and former Indiana-based delivery drivers who will be members of this class action is so great (numerosity) that joinder of all members is impractical.  Instead, Knoll will pursue discovery to obtain the names of the other current and former Indiana-based delivery drivers of Titan, to provide notice of the class action and to offer the opt out opportunity.

35.     Particularly with the type of wage claim and practice at issue in this case, there are questions of law and fact that are common to the entire class.

36.     Knoll's claims are typical of the claims of the whole group of current and former Indiana-based delivery drivers harmed by Titan's illegal wage deductions.  Knoll's claims are typical of the claims of the whole class of current and former Indiana-based delivery drivers harmed by Titan's illegal wage practices.

37.     Knoll will act to fairly and adequately protect the interests of the entire class of current and former Indiana-based delivery drivers for Titan.

38.     A class action is superior to other available means for the fair and efficient prosecution of these wage claims against Titan.  For example, to prove Titan's illegal wage practices, Knoll and other members of this class would seek in discovery records about all similarly situated current and former Indiana-based delivery drivers who were subjected to the same or similar "Adjustment" deduction on one or more pay checks (shown by pay stub). Individual lawsuits by the members of the class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds.  Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

39.     A determination regarding the "similarness" of those able to participate in the class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages.  Particularly with the type of Indiana statutory wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under Indiana law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

12

40.     A class action will result in an orderly and expeditious administration of the class members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

## V.  JURISDICTION AND VENUE

41.     This Court has jurisdiction over the subject matter of this Complaint under 28 USC § 1331, 28 USC § 1343, and 29 USC § 201 et seq. as Plaintiff's FLSA claims raise federal questions of law.  This Court has supplemental jurisdiction over Plaintiff's related claims under the Indiana Wage Payment Statute, which are based upon common sets of facts.

42.     Venue is proper in this Court pursuant to 28 USC § 1391 because the unlawful conduct alleged herein was committed in the Southern District of Indiana.

## VI.  STATEMENT OF CLAIMS

### A.  CLAIM UNDER THE FAIR LABOR STANDARDS ACT

43.     Knoll incorporates herein by reference paragraphs 1 - 42 above.

44.     Titan is a covered employer subject to the provisions of the Fair Labor Standards Act.  Titan is an "enterprise."  See 29 USC § 203(s)(1).  Further, Titan is an "employer" as that term is defined under the FLSA at 29 USC § 203(d).  Finally, Titan is a "person" as that term is defined under the FLSA.  29 USC § 215.

45.     Knoll and all similarly situated Titan delivery drivers are hourly paid, non-exempt employees entitled to be paid a minimum wage and, in weeks each worked in excess of forty hours, to overtime compensation.

46.     By paying Knoll and all similarly situated delivery drivers at an hourly rate of pay less than the FLSA minimum wage of $7.25 per hour while also applying an improper tip credit (and making improper use of the Plaintiffs' tips), Titan has violated the minimum wage provisions of the FLSA and owes Knoll and every similarly situated delivery driver the full minimum wage (including the full minimum overtime rate, where applicable) for every hour worked for Titan.  This includes an entitled to a full minimum wage for every hour worked by

13

Knoll and all similarly situated delivery drivers for all non-tipped worked performed in Titan's restaurants.

47.    Titan's failure to comply with the Fair Labor Standards Act's provisions regarding minimum wages and overtime wages is willful and without justification.

48.    Knoll seeks for herself and all similarly situated delivery drivers all available damages, including all unpaid wages, full minimum wages, overtime wages, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which each may be entitled for Titan's violations of the Fair Labor Standards Act.

**B.    Class Action Claims for Indiana Employees Under the Indiana Wage Payment Statute**

49.    Knoll incorporates herein by reference paragraphs 1 through 48 above.

50.    Knoll is the named Plaintiff whose Indiana statutory wage claim arises under the Indiana Wage Payment Statute, I.C. 22-2-5, and the Plaintiff who represents the same or similar interests of all current Indiana-based Titan delivery drivers and all Indiana-based former employees of Titan who voluntarily resigned from employment.

51.    By way of this Claim, Knoll is seeking, individually and on behalf of members of the Plaintiff Class of current and former Indiana-based delivery drivers of Titan all available damages, including all unpaid wages, all illegally deducted wages, all available liquidated (an amount equal to two times the illegally deducted wages) damages, all attorney's fees, costs and expenses, plus any other damage to which Knoll and her fellow Indiana-based Plaintiff Class members may be entitled pursuant to law.  Pursuant to I.C. 22-2-5-2, Knoll is seeking, individually and on behalf of members of the Plaintiff Class, payment of unpaid wages, illegally deducted wages, plus all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.

52.    Titan's failure to pay Knoll and all of her fellow class members their wages in full, particularly the wages it illegally deducted from pay checks to cover what it called "adjustments," constitutes bad faith action.  Titan can certainly not claim that it was acting in

14

good faith when it intentionally instituted a scheme of illegal wage deductions which plainly violate the Indiana Wage Assignment Statute.  See I.C. 22-2-6-2.  Moreover, Titan's deduction of costs for matters not disclosed to Knoll and all Indiana-based employees are taken in particular bad faith.

### C.  Knoll's Individual Claim Under the Indiana Wage Payment Statute

53.    Knoll incorporates herein by reference paragraphs 1 - 52 above.

54.    By way of this Complaint, Knoll is seeking for herself all available damages, including all unpaid wages, all underpaid wages, and all available liquidated damages, plus any and all attorney's fees, costs, and expenses, and any other damage to which she may be entitled pursuant to Indiana Law for her unpaid travel time.  Pursuant to the Indiana Wage Payment Statute, I.C. 22-2-5, Knoll is seeking payment of unpaid wages and all available damages, including, but not limited to, double the amount of wages due as an additional monetary damage, plus all attorney's fees, costs and expenses.

55.    Titan's failure to pay Knoll her wages in full and on time constitutes bad faith action.

### VII.  PRAYER FOR RELIEF

WHEREFORE, plaintiff Sherry A. Knoll, individually and on behalf of all similarly situated delivery drivers, respectfully requests that the Court enter judgment in the Plaintiff Class's favor and against the Defendant, and award to Knoll and the Plaintiff Class all available damages, including, but not limited to, unpaid wages, unpaid minimum wages, unpaid overtime wages, all liquidated damages, statutory damages, any and all equitable relief, plus payment of reasonable attorney's fees, costs and expenses, pre-judgment interest, and any and all other relief just and proper in the premises.

HUNT, HASSLER, KONDRAS & MILLER LLP
100 Cherry St.
Terre Haute, Indiana 47807
(812) 232-9691

15

By /s/Robert P. Kondras, Jr.
    Robert P. Kondras, Jr.
    Attorney No. 18038-84
    Attorney for Plaintiff
    kondras@huntlawfirm.net


BUNGER & ROBERTSON
226 South College Avenue
Bloomington, Indiana 47404
(812) 332-9295


By /s/Brian R. Drummy
    Brian R. Drummy
    Attorney No. 26348-49
    Attorney for Plaintiff
    bdrummy@lawbr.com