UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHERRY A. KNOLL individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:18-cv-02632-JRS-DML |
| TITAN RESTAURANT GROUP, LLC d/b/a DONATOS PIZZA, | ) ) ) | |
| Defendant. | ) | |

**Order on Plaintiff's Motion to Certify Combined Class Action and FLSA Collective Action (ECF No. 28)**

Plaintiff Sherry Knoll brings claims against Defendant Titan Restaurant Group, LLC d/b/a Donatos Pizza ("Titan") for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq*., and the Indiana Wage Payment Statute, IND. CODE § 22-2-5-1 *et seq*. (Am. Compl., ECF No. 8.) Knoll was a part-time delivery driver for Titan for approximately three months. Knoll alleges, on behalf of herself and similarly situated employees, that Titan illegally deducted from her wages, failed to ensure its employees received a minimum wage on a weekly basis, paid employees less than minimum wage during new employee orientation, did not compensate employees for tips paid on credit cards, cancelled credit card tips when refunding orders, required Knoll and other tip-credit employees to perform non-tipped activities, shared tipped employees' tips with non-tipped employees, and did not reimburse Knoll and other delivery drivers for their food deliveries. Knoll now seeks certification of a

FLSA collective action and a Federal Rule of Civil Procedure 23(b)(3) class action.

For the following reasons, Plaintiff's Motion to Certify Combined Class Action and FLSA Collective Action (ECF No. 28) is **denied**, Plaintiff's Motion for Approval of Class and Collective Action Notice and FLSA Opt In Form (ECF No. 31) is **denied**, and Defendant's Motion to File Surreply to Plaintiff's Reply in Support of her Motion to Certify a Combined Class Action and FLSA Collective Action (ECF No. 40) is **denied**.

## I.    Background

Titan is a franchisee of Donatos Pizza. (Stacho Dep. 18:1-3, ECF No. 35-1.) It operates 41 restaurants in Ohio, Kentucky, and Indiana. (*Id.* at 18:10-14.) Knoll worked as a part-time delivery driver at Titan's Greenwood, Indiana restaurant from May 1, 2018 to July 9, 2018. (Stacho Decl. ¶ 2, ECF No. 35-3.) Knoll was injured at work on July 9, 2018 and took medical leave. (Knoll Dep. 17:24—18:3; 156:2-12, ECF No. 29-3). Except for two days that Knoll returned to work—December 12 and 13, 2018—she has not worked for Titan since July 9, 2018 and has since been collecting workers' compensation. (Stacho Decl. ¶ 2, ECF No. 35-3.)

Titan pays its delivery drivers $4.05 per hour. (Knoll Pay Stubs, ECF No. 29-5; Tip Credit Acknowledgement, ECF No. 35-4 at 129.) Titan claims a tip credit from its tipped employees in order to meet its minimum wage obligation of $7.25 per hour. (*Id.*) In other words, $3.20 of tipped employees' $7.25 hourly wage comes from the tips they receive. (*Id.*) The tips an employee receives over the amount needed to satisfy minimum wage requirements are retained by the employee. (*Id.*)

New Titan employees go through an "onboarding process" in which they review and sign Titan's policies, procedures, and handbooks. (Thompson Dep. 16:8—17:9, ECF No. 29-13.) Counsel for Plaintiff states that Knoll underwent the onboarding process on May 1, 2018. (Knoll Br., ECF No. 30 at 18.) Knoll, however, remembers her onboarding process taking place "earlier than that." (Knoll Dep. 45:23—46:3, ECF No. 35-4.) The following documents contain Knoll's electronic signature and are dated May 1, 2018: Tip Credit Acknowledgment Form (ECF No. 35-4 at 129), Associate's Responsibility for Tip Reporting (ECF No. 35-4 at 130), Titan Restaurant Group Driver Safety Obligation & Agreement (ECF No. 35-4 at 159), Titan Restaurant Group Delivery Driver Safety Manual (ECF No. 35-4 at 161), and Associate Handbook (ECF No. 35-4 at 179). Knoll denies receiving or signing any of these documents. (Knoll Dep. 43:3-17; 47:11—48:7; 52:14—53:2; 55:11—56:12; 61:17—62:15, ECF No. 35-4.) Knoll claims that Ashley, a manager at the Greenwood Donatos, went on the computer and "checked the boxes" or typed in her name for her. (*Id.* at 44:24—45:17; 46:4-8.)

Titan pays its employees their hourly rate of pay for time spent completing the onboarding process. (*Id.* at 17:22—18:15.) If, for example, an employee's hourly wage was $4.05, they would be paid $4.05 per hour for orientation. (*Id.* at 18:5-15.) Titan's records show that Knoll was not paid at all for any orientation work done on May 1, 2018. (Stacho Dep. 127:22—128:2, ECF No. 29-2.)

Titan reimburses its drivers for the mileage they incur while delivering food. (Thompson 30(b)(6) Dep. 66:21—67:3, ECF No. 29-12.) The amount drivers are reimbursed varies by store. (Thompson Decl. ¶ 5, ECF No. 35-5.) At Knoll's home store, Greenwood, drivers are reimbursed $2.77 per delivery. (*Id.*) The reimbursement rate for each store was determined with the help of an outside consultant who "determined the average mileage per delivery being driven by delivery drivers at each store." (*Id.*) Knoll claims both that she was "not paid any type of mileage reimbursement for her transportation" (Knoll Dep. 122:12-18, ECF No. 35-4) and that she received $1.50 per run (Knoll Dep. 30:20-21; 31:24—32:4, ECF No. 35-4). Titan delivery drivers used their own vehicles to make deliveries. (Thompson 30(b)(6) Dep. 66:14-20, ECF No. 29-12.)

Titan employed outside vendors to process its employee payroll. (Stacho Dep. 53:9—55:4, ECF No. 35-1; Stacho Decl. ¶8, ECF No. 35-3.) Titan provided the outside vendor with employee hours, wages, and reported tip information on a weekly basis, but the vendor was calculating wage and reported tip information on a bi-weekly basis to ensure compliance with minimum wage. (Stacho Dep. 53:9—55:4, ECF No. 35-1; Stacho Decl. ¶8, ECF No. 35-3.)

Knoll's primary responsibility at Titan was to deliver food and drinks to customers. (Knoll Dep. 42:10-12, ECF No. 29-3.) Between deliveries, Knoll also folded boxes, took orders, managed the cash register, cleaned the floors and bathroom, prepped food, and did "whatever needed to be done in the store." (*Id.* at 113:20—114:1.)

Knoll testified that on some nights, some of the pizza cooks would make more in tips than she did. (Knoll Dep. 201:4:18, ECF No. 29-13.) Titan's Vice President of Operations testified that there is no tip pooling or tip sharing, and that whoever services the guest is the one who keeps the tip. (Thompson 30(b)(6) Dep. 44:15—45:4, ECF No. 29-12.) It is possible that a manager or another non-tipped employee could receive a tip if they walked a pizza out to a dine-in customer. (*Id.* at 45:14—46:4.)

If a customer is unsatisfied with the food delivered to them, a Titan manager can refund the customer's full payment for the order, which includes any tips that were paid through a credit card. (Thompson Dep. 12:12—13:8, ECF No. 29-13.)

Titan's Driver Safety Obligation & Agreement, which it requires all drivers to sign, contains the following provision:

> By my signature below, I hereby authorize the Company to withhold any earnings, compensation, or monies due to me, and to apply and set off such amounts against any outstanding amount of funds that the Company's records show that I retained. I authorize the Company to withhold and apply the amount withheld as repayment on my part, as if the compensation or monies had been delivered to me and then paid to the Company.

(Driver Safety Obligation & Agreement, ECF No. 29-7 at 2.) On June 12, 2018, Titan's payroll system did not account for tips received by twenty-four employees, including twelve Indiana employees, one of which was Knoll. (Stacho Decl. ¶ 5-7, ECF No. 35-3.) As a result, these employees were overpaid in the form of a tip adjustment. (Stacho Decl. ¶ 5-7, ECF No. 35-3; Knoll Pay Stubs, ECF No. 29-5 at 3-4.) Knoll was overpaid by $36.08. (*Id.*) On the next paycheck, June 26, 2018, this overpayment, $36.08 in Knoll's case, was deducted from the employee's check and listed as an "Adjustment." (*Id.*) Payroll records show that on the June 26, 2018 pay checks, employee

#96669 received a negative $1.44 adjustment and employee #96829 received a negative $101.66 adjustment.  (Payroll Reports, ECF Nos. 10 & 11.)

## II.    Discussion

### A.  *Motion to File Surreply*

Titan filed a Motion to File Surreply (ECF No. 40) to respond to arguments in Knoll's Reply Brief (ECF No. 38).  While Local Rule 7-1 does not provide for a surreply in motions practice, a party may seek leave from the Court to file a surreply addressing new matters argued in a reply brief.  *Westfield Ins. Co. v. TCFI Bell SPE III LLC*, No. 1:16-CV-02269, 2019 WL 1330456, at *4 (S.D. Ind. Mar. 25, 2019).  Titan contends that Knoll made two new arguments in her reply brief: (1) that the Driver Checkout Sheets reflect Titan's retention of credit card tips, and (2) that the Declaration of former Titan employee David Bowman is a declaration of a current Titan employee.  Knoll objects to Titan's motion (ECF No. 41) and claims that she was not raising new arguments in her reply, but merely responding to arguments Titan raised in its response.

Knoll's reply does not raise new arguments.  First, in her opening brief, Knoll cited the Driver Checkout Sheets and stated: "A careful analysis of these documents confirms that Titan delivery drivers are not compensated at all for their credit card-paid tips at the end of each shift."  (Knoll Br., ECF No. 30 at 6.)  Second, Titan submitted David Bowman's declaration with its Response Brief (ECF No. 35-7) and Knoll was merely responding to the submission of this evidence.  Further, Knoll's classification of Bowman as a current rather than former employee seems to be an oversight rather

than an argument on the merits.  Titan's Motion to File a Surreply (ECF No. 40) is therefore **denied**.

## B. FLSA Collective Action

Knoll seeks to conditionally certify the following collective action:

Present and former Titan Delivery Drivers who worked at any time from August 27, 2015 to the present and who were not timely paid a full minimum wage at the rate of at least $7.25 per hour in one or more work weeks.

Knoll alleges that seven of Titan's pay practices violate the FLSA and entitle her to conditional certification of her collective action.  The Court addresses each pay practice below and finds that conditional certification is inappropriate.

### 1. Legal Standard

The FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010).  Such collective actions provide employees "the advantage of lower individual costs to vindicate rights by the pooling of resources.  The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

"Because the FLSA does not specify how collective actions are to proceed, the management of these actions has been left to the discretion of the district courts." *Williams v. Angie's List, Inc.*, No. 1:16-cv-878, 2017 WL 1546319, at *2 (S.D. Ind. Apr. 27, 2017) (citing *Hoffmann-La Roche*, 493 U.S. at 171).  In this Circuit, district courts generally follow a two-step inquiry. *See, e.g., Armstrong v. Wheeels Assured Delivery*

*Sys., Inc.*, No. 1:15-cv-00354, 2016 WL 1270208, at *4 (S.D. Ind. Mar. 30, 2016); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 438-39 (S.D. Ind. 2012); *Campbell v. Advantage Sales & Mktg.*, LLC, No. 1:09-cv-1430, 2010 WL 3326752, at *3 (S.D. Ind. Aug. 24, 2010).

The first step is conditional certification. "If the court makes a preliminary, conditional determination based on the pleadings and any accompanying affidavits that the members of the putative class are similarly situated, the plaintiff is authorized to give notice to potential class members permitting them to opt-in to the class." *Armstrong*, 2016 WL 1270208, at *4 (citing *Hawkins*, 287 F.R.D. at 438-39). At this stage, the plaintiff is only required to make a "modest factual showing" that the class members were "victims of a common policy or plan that violated that law." *Fravel v. Cty. of Lake*, No. 2:07-cv-253, 2008 WL 2704744, at *2-3 (N.D. Ind. July 7, 2008). Conditional certification takes place before significant discovery occurs and may be reconsidered by the district court after discovery has been completed, even in the absence of new evidence. *Weil v. Metal Techs.*, 925 F.3d 352, 357 (7th Cir. 2019). "Although the first step of certification does not impose a high burden on the plaintiff," *Hawkins*, 287 F.R.D. at 439, it serves as an important step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *4 (E.D. Wis. Sept. 11, 2008) (citations omitted).

After conditional certification, "[t]he action proceeds as a representative action throughout discovery, and near the end of discovery, the court makes a factual determination of whether the plaintiffs are similarly situated." *Clemens v. Stericycle, Inc.,* No. 1:15-cv-01432, 2016 WL 1054605, at *2 (S.D. Ind. Feb. 17, 2016) (citation omitted.)

However, when a plaintiff seeks conditional certification of an FLSA class after significant discovery, as Knoll does here, the Court can "collapse the two stages of the analysis and deny certification outright." *Schneider v. Union Hosp., Inc.*, No. 2:15-cv-00204, 2016 WL 6037085, at *8 (S.D. Ind. Oct. 14, 2016) (quoting *Armstrong*, 2016 WL 1270208 at *5). "At this in-between stage, when substantial discovery has taken place – and where the Court believes the parties here currently find themselves – an intermediate level of scrutiny is applied." *Id.* (citing *Scott v. NOW Courier, Inc.*, No. 1:10-cv-971, 2012 WL 1072751 at *7-8 (S.D. Ind. Mar. 29, 2012)). An intermediate level of scrutiny is appropriate here. A significant amount of discovery has been conducted in this case: Knoll, the sole plaintiff, has been deposed, as well as Titan, through a Rule 30(b)(6) deposition of its Vice President of Operations. Further, Knoll and Titan both agree that an intermediate level of scrutiny should apply.

On a motion to certify a collective action, the Court is under no obligation to accept plaintiff's allegations as true. *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08-C-2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009). "Rather, the [C]ourt evaluates the record before it, including [Titan's] oppositional [evidence], to determine whether [Knoll is] similarly situated to other putative class members." *Id*; *see also Muecke v.*

*A-Reliable Auto Parts & Wreckers, Inc.*, No. 01-C-2361, 2002 WL 1359411, at *1 (N.D. Ill. June 21, 2002) ("we look beyond the complaint to determine whether the requirements for maintaining a collective action have been met").

2. <u>Tip Credit</u>

The FLSA allows employers to pay its tipped employees at an hourly rate less than minimum wage. 29 U.S.C. § 203(m). Employers then claim a "tip credit," from the tips its employees receive in order to meet its minimum wage requirement. *Id.* Employers may only claim a tip credit if it informs its employees of the provisions of § 203(m) and all tips received by the employee are retained by the employee. *Id.* at § 203 (m)(2)(A)(ii).

Knoll alleges that the following FLSA violations prevent Titan from claiming a tip-credit: (1) failing to ensure drivers were paid enough in tips to earn a minimum wage on a workweek basis, (2) retaining tips paid to drivers through credit cards, (3) refunding customer credit card transactions, which included tips intended for drivers, (4) failing to reimburse drivers for actual miles driven, and (5) requiring drivers to share their tips with non-tipped Titan employees. The Court addresses each of these arguments in turn.

i. Minimum Wage Determination on a Workweek Basis

Knoll first alleges that Titan has violated the FLSA by only ensuring employees are paid minimum wage on a bi-weekly rather than weekly basis. The FLSA requires that employees must be paid not less than $7.25 an hour, but it does not prescribe the computation period (e.g., a week, an hour) to be used in determining compliance

with the minimum wage. 29 U.S.C. § 206(a)(1)(C). Two years after the FLSA was enacted, the Department of Labor—the agency that administers the FLSA—issued a policy statement providing that the workweek was the "standard period of time over which wages may be averaged to determine whether the employer has paid the equivalent of [the minimum wage]." Wage & Hour Release No. R-609 (Feb. 5, 1940), *reprinted in* 1942 WAGE AND HOUR MANUAL (BNA) 185. The Seventh Circuit has since adopted that interpretation. *Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018).

Titan admits that its third-party payroll processing company was calculating its employees' wages on a biweekly basis, but disputes that an FLSA violation has occurred because Titan has since manually calculated Knoll's wages and tips on a weekly basis and found that she met or exceeded minimum wage each week. (Stacho Decl. ¶ 8, ECF No. 35-3.) Knoll maintains, however, that failure to calculate the wages on a workweek basis is a violation regardless of whether employees were paid the correct amount. Neither party cites to, and the Court is not aware of, any Seventh Circuit authority that found an FLSA violation when an employer failed to verify that their employees weekly pay complied with minimum wage.

However, the Court finds instructive several opinions from other circuits who have found no violation of 29 U.S.C. § 206(a) "so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week

multiplied by the minimum hourly statutory requirement." *United States v. Kling-hoffer Bros. Realty Corp.,* 285 F.2d 487, 490 (2d Cir. 1960). In *Klinghoffer*, the Second Circuit found the employer had not violated the FLSA by requiring its employees to work an extra six hours without pay because "each employee received during each week compensation equal to or exceeding the product of the total number of hours worked and the statutory minimum hourly rate." *Id.*

Similarly, the Fourth Circuit held that no minimum wage violation had occurred when an employee worked 60 hours a week, 10 of which were not compensated, because his weekly compensation was in excess of the minimum wage. *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1198 (4th Cir. 1969) (citing *Klinghoffer*, 285 F.2d at 487); *see also Douglas v. Xerox Bus. Servs., LLC*, 875 F.3d 884, 890 (9th Cir. 2017) (no FLSA violation where employer paid employees below minimum wage for some hours worked, and above minimum wage for others, because the employees were paid at least minimum wage for the workweek); *Dove v. Coupe*, 759 F.2d 167, 151 (D.C. Cir. 1985) (no FLSA violation where employees were not paid for specific hours worked during the week, but were paid at or above minimum wage for the workweek).

The Court agrees with the above cited authority and finds that 29 U.S.C. § 206 is only violated when an employee is paid less than minimum wage on a workweek basis. Titan's failure to calculate its employees' wages on a workweek basis will only violate the FLSA if an employee was actually paid less than the minimum wage during a workweek. Because Knoll was paid at or above minimum wage each week, she

does not have standing to assert this claim on behalf of other employees. *See E. Texas Motor Freight Sy. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and possess the same interest and suffer the same injury" as the class members.") (internal quotations omitted); *Schneider v. Union Hosp., Inc.*, No. 2:15-cv-00204, 2016 WL 524354, at *5-6 (S.D. Ind. Feb. 10, 2016) ("Just as Plaintiffs must establish that they have individual standing to assert claims brought as part of a putative class action, so too must they have standing to assert FLSA claims as part of a collective action."). Put otherwise, Knoll is not "similarly situated" to any employees who might have been paid less than minimum wage as a result of Titan's biweekly calculation process.

ii. Retaining Credit Card Tips

Knoll next argues that Titan retains the tips customers pay to her and other drivers through credit cards. In support, Knoll submits her own and four other Titan employees' Driver Checkout Sheets, which detail the amount of money in tips the drivers receive in a shift as well as how much they will be reimbursed for mileage. At the end of each shift, each driver and a manager fill out the checkout sheet on a computer. (Knoll Dep. 129:24—130:23, ECF No. 35-4.) The driver and manager then both sign a printed copy of the sheet. (*Id*.) The sheets list, among other things, the following amounts: "Delivery Reimbursement," "Free Deliveries," "Cash/Check/CC Tips," and "Total Reimbursement." Delivery Reimbursement is the amount a driver is reimbursed for deliveries he or she made. (Stacho Dep. 78:17-21, ECF No. 35-1.) For example, if a driver made two deliveries from the Greenwood store, he or she

would be reimbursed $5.44 ($2.77 x 2). Free Deliveries is the amount a driver is reimbursed for deliveries that are free to the customers, for example, when a customer's order is not prepared correctly. (*Id.* at 79:12-24; Thompson Dep. 32:3-9, ECF No. 29-13.) Cash/Check/CC Tips is the amount of cash and credit card tips an employee received during that shift. (Stacho Decl. ¶ 9, ECF No. 35-3.) The drivers themselves enter this number into the computer on the checkout sheet based on the cash they received in tips and the tips customers left for them on credit cards. (Thompson Decl. ¶ 2, ECF No. 35-5.) Total Reimbursement is the total amount that the driver will be reimbursed for regular and free deliveries.

Knoll contends that because the sheets do not include a total amount of what the driver takes home—tips and delivery—that the drivers were not taking home their tips. However, Knoll appears to be misreading the checkout sheets. *See Powers v. Centennial Commc'ns Corp.,* 679 F. Supp. 2d 918, 927 (N.D. Ind. 2009) (inquiring into all legal and factual issues necessary to determine class certification). Knoll conflates the Total Reimbursement amount with the total amount of money a driver takes home at the end of their shift—tips and mileage reimbursement. (*See* Knoll Reply Br., ECF No. 38 at 16-17.) In her Reply Brief, Knoll created her own table interpreting the data from the checkout sheets. (*Id.*) She included a column entitled "Driver Takes Home," which is not an amount listed on the checkout sheets. (*Id.*) In the "Driver Takes Home" column, Knoll listed the amount in the "Total Reimbursement" section of the checkout sheets, making it appear as though the driver is only taking home their mileage reimbursement and not their tips. (*Id.*; Driver Checkout Sheets,

ECF Nos. 29-14 & 29-15.)  But the checkout sheets do not include the total amount of money (tips and mileage reimbursement) a driver takes home at the end of a shift.

Rather, at the end of each shift, each driver enters into the computer, onto the checkout sheet, the amount of tips they received that day (cash and credit card tips). (Stacho Decl. ¶ 9, ECF No. 35-3; Knoll Dep. 81:7-14, ECF No. 35-4.)  This amount is reflected on the "Cash/Checks/CC Tips" line on the checkout sheets.  The driver then takes home, in cash, their mileage reimbursement and tips (cash and credit card) for the day.  (*Id*.; Thompson Decl. ¶ 2, ECF No. 35-5.)

While the checkout sheets do not represent that Titan was retaining its drivers credit card tips, Knoll testified, without offering any supporting evidence, that she was not paid her tips at the end of each night, and that whatever money she collected from customers during her delivery runs, she had to give back to the store.  (Knoll Dep. 136:3—137:19, ECF No. 35-4.)  But Knoll can only identify one other Titan employee who alleged he "had to pay more back than what he earned" at the end of his shift.  (*Id.* at 137: 20—138:3.)  Knoll, in her deposition, but nowhere in her Amended Complaint or briefs, states that this other employee was named Steve, but did not know his last name.  Without an accompanying affidavit or declaration from Steve, the Court cannot certify a collective action based on anecdotal evidence and speculation.  *See Molina v. First Line Sols. LLC*, 566 F. Supp. 2d 770, 786 (N.D. Ill. 2007) ("Unless defendant admits in its answer or briefs that other similarly situated employees exist, plaintiffs cannot rely on their allegations alone to make the required modest factual showing.")

### iii. Refunding Credit Card Tips

Knoll next asserts that Titan is also disqualified from taking a tip credit because when it refunds an unsatisfied customer's order, the tip intended for drivers is also sometimes refunded. While such a practice may in fact be a violation of the FLSA, *see Dayton v. Fox Res. Venue, LLC*, No. 1:16-cv-2109, 17 WL 286788, at *3 (S.D. Ind. Jan. 23, 2017), Knoll has not shown that Titan has a "common policy or plan" of refunding driver tips. *See Fravel*, 2008 WL 2704744, at *2-3).

In support of her claim, Knoll submits Thompson's testimony in which he discusses Titan's procedure when a customer requests a refund. When asked if Titan had a policy or practice regarding customer refunds, Thompson answered: "I would imagine that in our – somewhere written there is a policy, but I don't – I don't know if it's written." (Thompson Dep. 12:4-6, ECF No. 29-13.) Thompson stated that if a customer wanted a complete refund, including the tip, the entire credit card transaction could be cancelled. (*Id*. at 12:21—13:4.) But when asked if the company had any written rules regarding cancellation of credit card charges, Thompson replied: "No, not that I'm aware of." (*Id*. at 13:9-12.) Thompson also testified that the company does not have a process in place that ensures a driver will still receive his or her tip in the event of a full refund. (*Id*. at 14:17-23.)

Knoll also submits her own testimony, in which she claims she saw the manager and assistant managers refund entire credit card transactions, including any tip. (Knoll Dep. 180:25—181:5, ECF No. 29-3.) However, Knoll does not provide the court with testimony of any other Titan delivery drivers who had their tips cancelled during

a refund, nor does she establish that Titan had a policy of returning tips to customers when they requested a refund. As stated, the Court cannot certify a collective action based on anecdotal evidence and speculation. *See Molina*, 566 F. Supp. 2d at 786.

    iv. Mileage Reimbursement

Knoll submits that because Titan paid her and its other drivers at a flat reimbursement rate, rather than based on actual miles driven, Titan has violated the FLSA. *See* 29 C.F.R. § 531.35; *Armstrong,* 2016 WL 1270208, at *5 ("To prove a minimum wage violation under an 'inadequate reimbursement theory,' a plaintiff must prove the cost of the vehicle expenses actually 'cuts into the minimum or overtime wages required to be paid him [or her] under the Act.'") (quoting 29 C.F.R. § 531.35). Titan has a common policy or practice of paying all drivers the same flat reimbursement rate, which is based on store location. (*See* Thompson Decl. ¶ 5 (Greenwood: $2.77 per delivery; Broad Ripple: $2.18 per delivery; Plainfield: $2.33 per delivery; Mooresville: $2.78 per delivery.)) But Knoll claims both that she was "not paid any type of mileage reimbursement for her transportation" (Am. Compl. ¶ 12, ECF No. 8; Knoll Dep. 122:12-18, ECF No. 35-4) and that she received $1.50 per run (Knoll Dep. 30:20-21; 31:24—32:4, ECF No. 35-4). Knoll does not submit any evidence that other Titan employees were not reimbursed for their deliveries or paid at a rate of $1.50 per delivery. In fact, Knoll testified that she did not discuss with any Titan employees whether they received delivery reimbursements. (*Id.* at 124:10-13.)

Knoll therefore has not proven that she is similarly situated to the other Titan delivery drivers, as she has not shown that they were also being reimbursed at a rate

of less than $2.77 per delivery, or not reimbursed at all.  *See Blakley v. Celadon Grp.,*  *Inc.*, No. 1:16-cv-00351, 2017 WL 6989080, at *4 (S.D. Ind. Oct. 18, 2017) ("While  Named Plaintiffs cite anecdotal evidence to describe their own alleged underpay-  ments, such evidence is wholly insufficient to show that [Defendant] has a common  pay policy that allegedly violated the FLSA in light of the compensation distinctions  among [employees]."  (quoting *Armstrong,* 2016 WL 1270208, at *6).)

v. Tip Sharing

Lastly, Knoll argues that Titan is prohibited from claiming a tip credit because it  required her to share her tips with managers and cooks who are non-tip-credit em-  ployees.  *See* 29 U.S.C. § 203(m) (the tip credit "shall not apply with respect to any  tipped employee unless . . . all tips received by such employee have been retained by  the employee, except that this subsection shall not be construed to prohibit the pool-  ing of tips among employees who customarily and regularly receive tips").  But Knoll  does not submit any evidence to support her claim that she, much less other similarly  situated Titan employees, were required to share the tips that they received from  customers with other employees who do not customarily receive tips.

Knoll testified that back of the house employees and managers would sometimes  "walk away" at the end of a shift with more tips than her.  When asked if these em-  ployees were taking *her* tips, Knoll responded: "I'm just saying that they made more  tips than I did."  (Knoll Dep. 201:15-18, ECF No. 29-3.)  Titan does not pool tips be-  tween employees.  (Thompson 30(b)(6) Dep. 44:15—45:4, ECF No. 29-12.)  Any tips  received by an employee are retained by that employee, and if a manager or back of

the house employee receives a tip, it is because they walked a pizza out to a dine-in customer. (*Id.* at 45:14—46:4.) Knoll argues that Titan is still violating the FLSA because it does not have a policy in place that prevents non-tip-credit employees from receiving tips if there are tip-credit employees on duty. (Knoll Br., ECF No. 30 at 7.) However, Knoll has not provided the Court with any evidence that other Titan tip-credit employees were required to share their tips with non-tipped employees.

The anecdotal evidence submitted by Knoll, that sometimes, non-tip-credit employees would receive more tips than her, is not sufficient to make even a threshold showing that she and other Titan employees were subject to a policy that mandated tip-sharing with back of the house employees or managers. *See Williams,* 2017 WL 1546319, at *3 (finding that although plaintiffs "need not provide conclusive support" in order to meet their burden at the first stage of conditional certification, "they must provide an affidavit, declaration or other support beyond allegations in order to make a minimal showing of other similarly situated employees subjected to a common policy") (quoting *Molina*, 566 F. Supp. 2d at 786)).

3. Orientation Pay

Next, Knoll asserts that Titan has a policy of paying its delivery driver employees below minimum wage when they undergo the onboarding process. Employees are paid at their hourly rate for orientation, so, for example, delivery drivers would be paid at $4.05 an hour. (Thompson Dep. 17:22—18:15, ECF No. 29-13.) Knoll claims however, and Titan concedes, that she was not paid at all for the time she spent going through the orientation process on May 1, 2018. (Knoll Br. 18, ECF No. 30; Titan Br.

20, ECF No. 35.)  Knoll is therefore not similarly situated to other Titan employees who were paid $4.05 an hour for orientation, and she offers no evidence of any other Titan employees who similarly were not paid during the orientation process.  Thus, Knoll does not have standing to assert this claim on behalf of a collective action.  *See Rodriguez*, 431 U.S. at 403; *Schneider*, 2016 WL 524354, at *5-6.

4. Wage Deductions

Knoll argues that Titan has illegally deducted wages from her and other Titan employees through "adjustments" to their paychecks.  In support, Knoll submits her own pay stubs, as well as the payroll records of seven other Titan employees.  Knoll and two of these seven employees received "adjustments" to their paychecks on June 26, 2018.  (Stacho Decl. ¶ 5-7, ECF No. 35-3; Knoll Pay Stubs, ECF No. 29-5 at 3-4; Payroll Reports, ECF Nos. 10 & 11.)  The adjustments were negative deductions from their paychecks resulting from a payroll error that caused them to be overpaid during the previous pay period.  (*Id.*)  On June 12, 2018, Titan's payroll system did not account for tips received by some employees, including Knoll.  (Stacho Decl. ¶ 5-7, ECF No. 35-3.)  As a result, these employees were overpaid in the form of a tip adjustment. (Stacho Decl. ¶ 5-7, ECF No. 35-3; Knoll Pay Stubs, ECF No. 29-5 at 3-4.)  Knoll was overpaid by $36.08.  (*Id.*)  On the next paycheck, June 26, 2018, this overpayment, $36.08 in Knoll's case, was deducted from the employee's check and listed as an "Adjustment." (*Id.*)  Payroll records show that on the June 26, 2018 pay checks, employee #96669 received a negative $1.44 adjustment and employee #96829 received a negative $101.66 adjustment.  (Payroll Reports, ECF Nos. 10 & 11.)  Knoll argues that

these adjustments violate the FLSA's provision that wages must be paid "unconditionally" and not subject to any kickbacks. *See* 29 C.F.R. § 531.35.

The Court makes no decision as to whether adjusting for an overpayment is a kickback at all, or whether this one-time adjustment to employees' paychecks otherwise violates the FLSA. However, the Court finds that the evidence before it—paystubs from three Titan employees who received a one-time negative adjustment to their paychecks—does not demonstrate a common pay plan or policy that violated the FLSA. *See Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) ("It is the opinion of the Court that a demonstration of [the defendant's] payment practice concerning two out of fifty employees (four percent of Defendant's workforce) does not rise to the level of a common policy or plan by [the defendant] that violated the FLSA."). Knoll has not set forth any evidence that Titan has made negative adjustments to its employees' pay checks on more than one occasion or even that Titan has a policy of making such deductions when payroll errors are made. This is not even a "modest factual showing" of a common plan or policy. *See Fravel,* No. 2008 WL 2704744, at *2-3.

5. <u>Non-Tipped Work</u>

Lastly, Knoll claims that Titan violated the FLSA by requiring its delivery drivers to perform non-tipped activities. Knoll testified that she performed various non-tipped tasks, and Thompson testified that delivery drivers are sometimes asked to answer phones, fold pizza boxes, orchestrate large orders, and route deliveries. The record does not contain evidence of how much time Knoll spent on these activities,

nor does it contain any evidence from other Titan delivery drivers who were required to perform non-tipped work.

Knoll argues that the Department of Labor investigated and fined Titan for requiring tipped employees to perform non-tipped work, but the report she cites to appears to be an investigation into Titan's delivery driver mileage policy. (*See* DOL Report, ECF No. 29-17 at 2.) Knoll also cites several cases in which the district court granted conditional certification for classes of tipped employees who performed non-tipped work. In all of these cases, however, the court was presented with evidence from more than one employee. *See Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 959 (S.D. Ind. 2016) (eight declarations from employees stating they spent between 30 to 60 percent of their time performing non-tipped work); *Johnson v. Pinstripes, Inc.*, No. 12-cv-1018, 2013 WL 5408657, at *3 (N.D. Ill. Sept. 26, 2013) (depositions from employees detailing their non-tipped work and company training manuals that described the required "side work"); *Driver v. AppleIllinois, LLC*, 890 F. Supp. 2d 1008, 1019 (N.D. Ill. 2012) (42 declarations from former employees and 61 declarations from current employees "describing their shift lengths and frequency, the tasks routinely and occasionally assigned to them, and the approximate time it takes to complete those assignments"). Without such evidence, the Court cannot find that Knoll and other Titan delivery drivers were subject to a common policy of requiring tipped employees to perform non-tipped work at a rate below minimum wage.

Because Knoll has not shown that she and similarly situated employees were victims of a common policy that allegedly violated the FLSA, conditional certification of her proposed collective action is not appropriate.

## C. Rule 23(b)(3) Class Action

Knoll seeks to certify the following class under the Indiana Wage Payment Statute:

> Present and former Titan Delivery Drivers who worked in the State of Indiana at any time from August 27, 2016 to the present and who, as shown by Titan's own pay roll records, were not timely paid regular wages on one or more occasions based upon wage deductions taken by Titan in a category it called "Adjustment."

Knoll alleges that the negative adjustment on her paycheck was a "wage assignment" in violation of IND. CODE § 22-2-6-2(a). Employers can only assign its employees' wages if "(1) [t]he assignment is: (A) in writing; (B) signed by the employee personally; (C) by its terms revocable at any time by the employee upon written notice to the employer; and (D) agreed to in writing by the employer."

### 1. Legal Standard

"To be certified as a class action, the putative class must first meet the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, typicality, commonality, and adequacy." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016). "Failure to meet any of the Rule's requirements precludes class certification." *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). On motions to certify, courts do not assume as true the facts asserted by the plaintiff. *Messner v. Northshore Univ.*

*HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Id.* (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir.2001). Knoll must show, by a preponderance of the evidence, that the proposed class satisfies the requirements of the rule. *Messner,* 699 F.3d at 811. Class actions "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied'" so as to protect "absent class members whose rights may be affected by the class certification." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 160–61 (1982)). District courts have "broad discretion to determine whether certification of a class action lawsuit is appropriate." *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 2001).

Knoll seeks certification under Rule 23(b)(3), and therefore "must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner*, 669 F.3d at 811. The Supreme Court has noted that "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "Rule 23(b)(3), as an 'adventuresome innovation,' is designed for situations in which class-action treatment is not as clearly called for." *Id.* (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011)) (internal quotations omitted).

2. Putative Class

In support of her motion to certify, Knoll submits the same evidence she did for her FLSA wage deduction claim: her pay stubs and the payroll records of seven other Titan employees which reflect "adjustments" to their paychecks on June 26, 2018, as a result of a payroll error that caused them to be overpaid during the previous pay period. (Stacho Decl. ¶ 5-7, ECF No. 35-3; Knoll Pay Stubs, ECF No. 29-5 at 3-4; Payroll Reports, ECF Nos. 10 & 11.) Knoll argues that these adjustments violate the Indiana Wage Payment Statute because Titan did not give employees the required fourteen-day notice before making the deductions. *See* IND. CODE 22-2-6-4(a) ("If an employer has overpaid an employee, the employer may deduct from the wages of the employee the amount of the overpayment . . . . An employer must give an employee **two (2) weeks notice** before the employer may deduct, under this section, any overpayment of wages from the employee's wages") (emphasis added).

Titan admits that it made such deductions from twelve of its Indiana employees' paychecks without first giving them two weeks notice. However, Titan maintains that its employees waived the two-week notice provision of the Indiana Wage Payment Statute by signing its Driver Safety Obligation & Agreement, which authorizes Titan to "withhold any earnings . . . and to apply and set off such amounts against any outstanding amount of funds that the Company's records show that [employees] retained" and "to withhold and apply the amount withheld as repayment on my part, as if the compensation or monies had been delivered to me and then paid to the Company." This is not of concern when trying to determine whether to certify the class,

however. Rather, the Court is now concerned with the four requirements of Rule 23, turning first to numerosity.

Rule 23 requires the proposed class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Knoll estimates that the putative class will contain between 400 and 500 members—all Indiana delivery drivers who have worked for Titan since August 27, 2016. Knoll bases this estimate solely on the Department of Labor investigation into Titan. (*See* DOL Report, ECF No. 29-17 at 3.) But the DOL investigation covered the time period of May 7, 2013 to May 4, 2015, and the DOL estimated that Titan's total number of employees, across Indiana, Ohio, and Kentucky, was "around 800 to 900." (*Id.*) Knoll does not explain to the Court how she came to the conclusion that 400 to 500 Indiana drivers worked for Titan from August 27, 2016 to the present. Further, the evidence Knoll submitted in support of her wage deduction claim reveals that only twelve Indiana Titan delivery drivers were affected by the one-time adjustment to their paycheck.[1] And Knoll has not proven that the negative adjustments to employee paychecks were a routine or recurring practice that affected more than those twelve employees. Titan argues that the class would contain twelve members, and the Court agrees.

While this Circuit has not designated a "magic number" at which joinder of all members is impractical, 40 is usually found sufficient. *Ringswald v. Cty. of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000). Knoll's proposed class of twelve falls far short of

---

[1] In fact, Knoll's evidence reveals negative adjustments were made to only seven employees, Knoll Pay Stubs, ECF No. 29-5 at 3-4; Payroll Reports, ECF Nos. 10 & 11), but Titan has admitted that twelve employees were affected. (Stacho Decl. ¶ 7, ECF No. 35-3.)

this threshold. *See Mulvania v. Sheriff of Rock Island Cty.,* 850 F.3d 849, 858 (7th Cir. 2017) (affirming a finding that a class of 29 members insufficient for class certification).

In addition, Knoll has not explained why joining the twelve affected Indiana Titan delivery drivers is impractical except for a conclusory statement in her Amended Complaint. But mere speculation and conclusory allegations cannot support a finding that joinder is impractical. *Arreola v. Godinez,* 546 F.3d 788, 797 (7th Cir. 2008) (quoting *Roe v. Town of Highland,* 909 F.2d 1097, 1100 n. 4 (7th Cir.1990)); s*ee also Pruitt v. City of Chicago, Ill.*, 472 F.3d 925, 926 (7th Cir. 2006) (affirming denial motion for class certification because there was no showing by the moving party that joinder as plaintiffs of 40 possible class members would not be practicable).

Because Knoll has not met Rule 23's numerosity requirement, the Court need not address Rule 23's other prongs. Knoll is not entitled to class certification of her Indiana Wage Payment Statute claim.

*D. Evidentiary Issues*

There are various evidentiary objections outstanding. Knoll objects to the declarations of Stacho (ECF No. 35-3) and Thompson (ECF No. 35-5), arguing that they contradict Stacho and Thompson's deposition testimony. Knoll points to three examples of contradictory statements. First, Knoll claims that Stacho's declaration is contradictory because she testified in her deposition that Titan failed to ensure its employees earned a minimum wage each workweek. But Stacho's declaration states

exactly that: "the processor was making calculations of wage and reported tip information to ensure compliance with weekly minimum wage on a bi-weekly, rather than weekly, basis." (Stacho Decl. ¶ 8, ECF No. 35-3.)  There does not appear to be any contradiction.  Second, Knoll argues Thompson's declaration contradicts his deposition testimony in which he "admitted Titan had no records to contradict its driver checkout sheets to show any payment of credit card tips over to its drivers."  Thompson discusses the driver checkout sheets in paragraph three of his declaration, but he does not offer any testimony contradicting his deposition, nor does he attempt to contradict his testimony with any records or other evidence.  Lastly, Knoll objects to Thompson's declaration because in his deposition testimony he "admitted Titan fails to pay employees a full minimum wage for work performed during orientation."  But Thompson's declaration contains no statements about employee orientation nor compensation for such work.

Knoll also objects to the declarations of Stacho (ECF No. 35-3), Thompson (ECF No. 35-5), Simon (ECF No. 35-6), Bowman (ECF No. 35-7), Rich (ECF No. 35-13), and Mills (ECF No. 35-12), contending that the declarants were not disclosed during discovery.  Federal Rule of Civil Procedure 26(a)(1)(A)(i) requires parties to disclose the names of each individual it may use to support its claims.  Because Knoll deposed both Stacho and Thompson, the Court can only assume that Titan disclosed their names during discovery.  The Court is not aware of, and Knoll does not cite to, any authority requiring a party to disclose the specific vehicle through which it will offer a witness' testimony.  Stacho and Thompson's declarations have therefore properly

been considered by the Court and the objection to their declarations is **overruled**. Collective and class action certification is not warranted even excluding the declarations of Simon, Bowman, Rich and Mills, which the Court did not consider, so the Court need not reach the issue.

### III.    Conclusion

For the reasons explained above, Plaintiff's Motion to Certify Combined Class Action and FLSA Collective Action (ECF No. 28) is **denied**. Plaintiff's Motion for Approval of Class and Collective Action Notice and FLSA Opt In Form (ECF No. 31) is **denied**. Plaintiff's objections to the declarations of Stacho (ECF No. 35-3) and Thompson (ECF No. 35-5) are **overruled**. Lastly, Defendant's Motion to File Surreply to Plaintiff's Reply in Support of her Motion to Certify a Combined Class Action and FLSA Collective Action (ECF No. 40) is **denied**.

**SO ORDERED.**

Date:   3/18/2020

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution via CM/ECF to all parties of record.